UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. |
| | ) |
| MAX MINDS, LLC, and TRIANGLE EXPERIENCE GROUP, INC., | )<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, THE HANOVER INSURANCE COMPANY ("Hanover"), hereby submits the following Complaint for Declaratory Judgment against Defendants, MAX MINDS, LLC ("Max Minds") and TRIANGLE EXPERIENCE GROUP, INC. ("Triangle").

**PARTIES**

1. Plaintiff Hanover is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

2. Defendant Max Minds is an Indiana limited liability company whose sole member is Brandon Fischer, an Indiana citizen.

3. Defendant Triangle is a Virginia stock corporation with its principal place of business is in Ashland, Virginia.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff (Hanover) and the defendants (Max Minds and Triangle), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because events giving rise to the claim for coverage occurred in this district.

## FACTUAL BACKGROUND

**Triangle Complaint**

6. On or about December 28, 2023, a Complaint was filed in the United States District Court for the Eastern District of Virginia under the caption, *Triangle Experience Group, Inc. v. Max Minds, LLC*, Case No. 1:23-cv-01797 (the "Triangle Complaint"). A true and correct copy of the Triangle Complaint is attached hereto and incorporated herein as **Exhibit A**.

7. The Triangle Complaint summarizes its claims with the following allegations:

   a. The parties [in the Triangle Complaint] entered into a Joint Venture Agreement ("Agreement") under which they were to collaborate on creating a new software system, "Haptic," which could be used by both Federal and Commercial entities. Under the Agreement, the parties would co-own the technology created by the collaboration, and the parties would share 50/50, the revenues generated by their collaboration, with some exceptions.

   b. Max Minds breached the Agreement by: 1) creating a defective product for the Federal space that failed catastrophically, (2) filing to update the Haptic Federal version of the software, 3) by using the funding provided by the Plaintiff to update Haptic Federal into a commercial product known as "Alleo," and 4) refusing to share with Triangle the revenues generated by the Max Minds' own sales of Haptic, Haptic Federal and/or Alleo, all of which were essentially the same product, with different updates.

   c. Max Minds breached its warranty of implied fitness for a particular purpose because the software failed catastrophically.

Ex. A, Paragraphs 1-3.

8. The Triangle Complaint alleges the following acts or omissions by Max Minds that occurred prior to January 1, 2023:

   a. In October 2021, Fischer informed Triangle that he was developing a use case

       to use with potential investors. Fischer failed to state whether he had provided an NDA to potential investors or had informed them that Triangle was Haptic's co-developer.

   b. On December 13, 2021, Triangle learned, by logging on to c4map.hap.tc, that Max Minds had covertly changed Haptic's name to Alleo. When questioned, Fischer admitted that Alleo was simply a name change.

   c. In a call on December 15, 2021, while Triangle had provided substantial funding to fix the problems identified in testing with the federal government, Fischer indicated that he did not want to do any more custom engineering projects for Triangle, unless there was a specific well-defined project. He noted that the "ownership of IP" had muddied the waters. When asked about the name change of Alleo, Fischer's response was that he had given Triangle too much access. When Fischer was questioned about the need for a separate branch of Haptic Federal, Fischer responded that that was his intent, "when the time comes". He had not made any such division yet, because it was too expensive.

   d. Whatever Fischer's intention, on April 1, 2022, Max Minds began advertising Alleo to government contractors, instead of Haptic.

   e. For the next year, the parties continued to work together, with Triangle reporting occasional critical bugs to Max Minds, including, but not limited to: on April 5, 2022 (Presentation mode), April – September 2022 (Dumpster Blender), November 2022 (Configuration Tool). As a result of these failures, Triangle did not make additional sales.

   f. On December 8, 2022, Triangle provided Fischer with a document prepared by the U.S. Central Command that outlined the government's concerns and priorities. Max Minds has never responded to this document.

<u>Ex. A</u>, Paragraphs 45, 47-51.

    9.    The Triangle Complaint contains four counts:

a. Count I – Declaratory Judgment, seeking a declaration that the software, and all versions of it, is owned by Triangle and Max Minds on a 50/50 basis.

b. Count II – Breach of Contract, seeking $90,000,000, plus interest and costs, as a result of Max Minds' alleged breach of the JV Agreement by failing to create and maintain a functioning source code.

c. Count III – Breach of Warranty, seeking $90,000,000, plus interest and costs, as a result of Max Minds' alleged breach of the implied warranty of fitness for a particular purpose by failing to create and maintain a functioning source code for the purpose of U.S. Military consumers.

d. Count IV – Breach of Contract, seeking $10,000,000, plus interest and costs, as a result of Max Minds' alleged breach of the JV Agreement by making sales of the software and failing to provide Triangle with 50 percent of the revenues of such sales.

e. Count V – Breach of the Non-Disclosure Agreement, seeking $10,000,000, plus interest and costs, as a result of Max Minds' alleged breach of the Non-Disclosure Agreement by providing Triangle's confidential information to third parties, including vendors, investors, and other parties, without Triangle's permission.

**Hanover Policies**

10. Hanover issued a Technological Professional and Cyber Advantage Policy, Policy Number LHW J268705 00, effective January 1, 2023 to January 1, 2024 to Max Minds, with a retroactive date of January 1, 2023 (the "23-24 Policy"). A true and correct copy of the 23-24 Policy is attached hereto and incorporated herein as **Exhibit B**.

11. Hanover issued a Technological Professional and Cyber Advantage Policy, Policy Number LHW J268705 01, effective January 1, 2024 to January 1, 2025 to Max Minds, with a retroactive date of January 1, 2023 (the "24-25 Policy"). A true and correct copy of the 24-25 Policy is attached hereto and incorporated herein as **Exhibit C**.

12. Both the 23-24 Policy and the 24-25 Policy contain the following provisions:

**SECTION I – COVERAGE**

**A. TECHNOLOGY LIABILITY COVERAGE**

**1. ERRORS AND OMISSIONS LIABILITY**

We will pay those sums "you" become legally obligated to pay as "damages" and "claim expense" because of a "claim made against "you" directly resulting from an actual or alleged "errors and omissions anomaly" in "your product" or "your work" to which this insurance applies.

**2. CYBER AND PRIVACY SECURITY LIABILITY**

We will pay those sums "you" become legally obligated to pay as "damages" and "claim expense" because of a "claim" made against "you" directly resulting from an actual or alleged "cyber and privacy security anomaly" in "your product" or "your work" to which this insurance applies.

**3. PERSONAL INJURY LIABILITY**

We will pay those sums "you" become legally obligated to pay as "damages" and "claim expense" because of a "claim" made against "you" directly resulting from an actual or alleged "personal injury anomaly" in "your product" or "your work" to which this insurance applies.

**4. MEDIA AND CONTENT LIABILITY**

We will pay those sums "you" become legally obligated to pay as "damages" and "claim expense" because of a "claim" made against "you" directly resulting from an actual or alleged "media and content anomaly" in "your product" or "your work" to which this insurance applies.

**5. WHEN THIS INSURANCE APPLIES**

The insurance provided in paragraphs **1.** through **4.** above applies only if:

   **a.** The "third party anomaly" first occurred on or after the applicable retroactive date(s) and before the end of the "policy

period". The applicable retroactive date is the specific date entered on the Declarations for that "third party anomaly", or if no date is entered, the policy effective date shown on the Declarations;

**b.** The "claim" is first made against "you" during the "policy period" or any applicable extended reporting period we provide and the "claim" is reported to us as set forth in **SECTION V – CONDITIONS, 9. Duties in the Event of a "Claim"**. A "claim" will be deemed to be first made at the following times:

**(1)** With respect to the "Named Insured", when we or any "described authorized person" first receives notice that a "claim" has been made or will be made against the "Named Insured"; or

**(2)** With respect to "you" (other than the "Named Insured"), when either we or "you" first receive notice that a "claim" has been made or will be made against "you"….

\*\*\*

**e.** Prior to the inception date of the first Technology Professional and Cyber Advantage policy issued by us, no "described authorized person" knew a "third party anomaly" occurred, or knew of any fact which could reasonably be expected to result in a "claim".

**6. DEFENSE AND SETTLEMENT**

**a.** We have the right and duty to defend "you" against any "claim" seeking "damages" to which this insurance applies, even if the allegations in such "claim" are groundless, false or fraudulent;

**b.** We have the right and duty to defend "you" against any "claim" seeking injunctive relief to prevent any "third party anomaly" to which this insurance applies from continuing or resuming, but only if no provider of other insurance has a duty to defend that "claim".

\*\*\*

**SECTION II – EXCLUSIONS**

**A. EXCLUSIONS APPLICABLE TO SECTION I – COVERAGE, A. TECHNOLOGY LIABILITY COVERAGE AND B. FIRST PARTY CYBER COVERAGE**

This insurance does not apply to:

\*\*\*

**4. Intellectual Property**

Any liability or expense, arising out of theft, misappropriation, misuse, infringement or contributory infringement of any intellectual property right.

However, this exclusion does not apply to coverage specifically provided under **SECTION I – COVERAGES, A. TECHNOLOGY LIABILITY COVERAGE, 4. MEDIA AND CONTENT LIABILITY**.

**8. Unfair or Deceptive Business Practices**

Any liability or expense arising out of false or deceptive advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business or trade practices, or any violation of securities, corporate governance or consumer protection laws, Racketeer Influenced and Corrupt Organizations Act (RICO), or any similar local, state, federal or foreign law or regulation. However, this exclusion does not apply to a "claim" that is otherwise covered under **SECTION I – COVERAGE, A. TECHNOLOGY LIABILITY COVERAGE, 2. CYBER AND PRIVACY SECURITY LIABILITY**.

If a limit for Fines and Penalties and Regulatory Defense is shown on the Declarations, this exclusion does not apply to "fines and penalties" otherwise specifically covered under this policy.

\*\*\*

**SECTION VI – DEFINITIONS**

5. **"Claim"** means:

    a. Any written demand for "damages";

    b. A "suit";

    c. A written request to toll or waive a Statute of Limitations; or

    **d.** If Fines and Penalties and Regulatory Defense coverage is shown with a limit on the Declarations, "claim" also means a "regulatory proceeding".

With the exception of "regulatory proceeding" described in paragraph **d.** above, "claim" does not mean any criminal proceeding, regulatory or criminal administrative proceeding, or formal or informal criminal investigation.

"Claim" does not include a request by "you" for reimbursement of "first party cyber loss".

10. **"Confidential business information"** means any information related to trade secrets, processes, operations, style of work, identification of customers, or other information of commercial value which is owned, licensed, maintained or stored by "you" when disclosure is likely to cause harm to the business or there is a written requirement that the information be kept confidential..

15. **"Cyber and privacy security anomaly"** means:

    **a.** Failure to prevent unauthorized access to or unauthorized use, theft, loss, accidental release or publication of "confidential business information" or "personal information";

    **b.** Failure to provide an authorized user access to "your" "computer system";

    **c.** Failure to prevent tampering with code or an unintended transmission of a virus or harmful code;

    **d.** Failure to comply with any provision in "your" "privacy policy" to protect "personal information" that is subject to any "privacy law" or "breach notification law"; or

    **e.** Failure to provide notification of any actual or potential unauthorized access to or use of "personal information" as required by any "breach notification law" that applies to "you".

21. **"Damages"** means a monetary judgment, award or settlement that "you" become legally obligated to pay. "Damages" also means punitive or exemplary "damages" or the multiplied portion of multiplied awards, if insurable under law. This paragraph shall be governed by the applicable law of the most favorable jurisdiction for such "damages":

    **a.** Where the "claim" seeking such "damages" is brought or where such "damages" are awarded;

    **b.** Where the "third party anomaly" giving rise to the "claim" occurred;

    **c.** Where "you", subject to such "damages", are incorporated or have "your" principal place of business; or

    **d.** Where we are incorporated or have our principal place of business.

    However, "damages" does not include any:

    **e.** Cost or expense to recall, upgrade, correct, complete, rework, repair, or replace "your product" or "your work" in whole or in part by:

        **(1)** Any of "you"; or

        **(2)** Another party if any of "you" had the opportunity to upgrade, correct, complete, rework, repair, or replace "your product" or "your work";

    **f.** Costs to comply with an order for injunctive relief, or to comply with an agreement to provide such relief;

    **g.** Credits, coupons, offsets, refunds or return of fees, rebates, charges, commissions or other compensation paid to "you";

    **h.** Taxes;

    **i.** Voluntary payments; or

    **j.** Fines or penalties, except as provided above with respect to punitive, multiple portion of "damages". However, if a limit for Fines and Penalties and Regulatory Defense is shown on the Declarations, this paragraph does not apply to "fines and penalties" otherwise specifically covered under this policy.

**24. "Described authorized person"** means:

    **a.** An individual, then the "Named Insured";

    **b.** A partnership, joint venture or limited liability company, any "Named Insured's" partner, manager or member; or

    **c.** An organization other than a partnership, joint venture or limited liability company, any "Named Insured's" legal, finance, risk

management or other department that is responsible for insurance matters, or the organizational or functional equivalent of such positions.

28. **"Errors and omissions anomaly"** means:

   a. Error, omission or negligent act;

   b. Breach of warranty or representation as to fitness, quality, suitability or performance; or

   c. Failure to perform the function or serve the purpose intended.

38. **"Media and content anomaly"** means:

   a. Infringement or dilution of title, slogan, trademark, trade name, trade dress, service mark, service name, or copyright;

   b. Misappropriation of ideas under an implied contract;

   c. Plagiarism;

   d. Piracy, but only when it directly relates to infringement of copyright or trademark; or

   e. Misuse of an intellectual property right in "content", but only when it results in "media and content liability anomalies" described in **38.a)** through **d)** above.

44. **"Personal injury anomaly"** means:

   a. Invasion, intrusion or interference with the right of privacy or publicity, including false light, or commercial appropriation of name or likeness;

   b. Wrongful entry, eavesdropping, eviction, trespass or other invasion of the right of private occupancy;

   c. Defamation, libel, slander, product disparagement, trade libel, mental anguish, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or entity; or

   d. False, arrest, detention, imprisonment, or malicious prosecution.

63. **"Third party anomaly"** means any of the following:

      a. "Errors and omissions anomaly";

      b. "Cyber and privacy security anomaly";

      c. "Personal injury anomaly"; or

      d. "Media and content anomaly".

## COUNT I

**(Declaratory Judgment – Count I of Triangle Complaint Does Not Seek "Damages")**

13. Hanover incorporates and re-alleges Paragraphs 1 through 12 above as Paragraph 13, as though fully set forth herein.

14. The Technology Liability Coverages in the 23-24 Policy and 24-25 Policy apply only to "damages" and "claim expenses", as those terms are defined in the policies.

15. Count I of the Triangle Complaint seeks only declaratory relief, not "damages".

16. **SECTION I – COVERAGE, A. TECHNOLOGY LIABILITY COVERAGE, 6. DEFENSE AND SETTLEMENT** provides that Hanover has a right and duty to defend only "claims" seeking "damages" or injunctive relief.

17. Because Count I of the Triangle Complaint does not seek "damages" or injunctive relief, Hanover has no duty to defend or indemnify with respect to Count I of the Triangle Complaint.

## COUNT II

**(Declaratory Judgment – Counts II, III and IV of Triangle Complaint is Excluded from Coverage Do Not Allege any "Third Party Anomaly" First Occurring On or After the Applicable Retroactive Date)**

18. Hanover incorporates and re-alleges Paragraphs 1 through 12 above as Paragraph 18, as though fully set forth herein.

19. To the extent Counts II, III and IV in the Triangle Complaint allege a "third party anomaly", as defined in the 23-24 Policy and 24-25 Policy, those "third party anomalies" first occurred before the applicable retroactive date, January 1, 2023.

20. Count II alleges that Max Minds breached the JV Agreement by failing to create

and maintain a functioning source code, which allegedly began after November 2021, when the US Army purchased the last version of C4MAP powered by Haptic that functioned properly, and continued through 2022, when Triangle reported critical bugs to Max Minds. Ex. A, Paragraphs 46, 48, 50, and 67.

21. Count III alleges that Max Minds breached the implied warranty of fitness for particular purpose by failing to create and maintain a functioning source code for the purpose of U.S. Military consumers, which allegedly began after November 2021, when the US Army purchased the last version of C4MAP powered by Haptic that functioned properly, and continued through 2022, when Triangle reported critical bugs to Max Minds. Ex. A, Paragraphs 46, 48, 50, and 70.

22. Count IV alleges that Max Minds breached the JV Agreement by making sales of the software and failing to provide Triangle with 50 percent of the revenues of such sales, which allegedly began at least as early as when Max Minds began advertising Alleo to government contractors, instead of Haptic, on April 1, 2022. Ex. A, Paragraphs 49, 62, 73.

23. Because Counts II through IV do not allege a "third party anomaly" first occurring on or before January 1, 2023 (the retroactive date in the 23-24 Policy and 24-25 Policy), Hanover has no duty to defend or indemnify with respect to Counts II through IV pursuant to **SECTION I – COVERAGE, A. TECHNOLOGY LIABILITY COVERAGE, 5. WHEN THIS INSURANCE APPLIES**.

## COUNT III

**(Declaratory Judgment – Count V of Triangle Complaint is Excluded from Coverage)**

24. Hanover incorporates and re-alleges Paragraphs 1 through 12 above as Paragraph 24, as though fully set forth herein.

25. Count V of the Triangle Complaint alleges that Max Minds breached the Non-Disclosure Agreement by providing Triangle's confidential information to third parties without Triangle's permission.

26. The confidential information that Max Minds allegedly provided to third parties

was intellectual property. Specifically, the Non-Disclosure Agreement defines "confidential information" as "all confidential or proprietary information in oral, written, graphic, electronic or other form including, but not limited to, past, present and future business, financial and commercial information, business concepts, prices and pricing methods, marketing and customer information, financial forecasts and projections, technical data and information, formulae, analyses, trade secrets, ideas, methods, processes, know-how, computer programs, products, equipment, product road maps, prototypes, samples, designs, data sheets, schematics, configurations, specifications, techniques, drawings, and any other data or information delivered by either of the Parties to the other". Ex. A, Ex. 2 thereto.

27. Count V does not allege a "media and content anomaly", as defined in the 23-24 Policy and 24-25 Policy, because Count V does not allege infringement or dilution of title, slogan, trademark, trade name, trade dress, service mark, service name, or copyright, does not allege misappropriation of ideas under implied contract, does not allege plagiarism, does not allege piracy, and does not allege misuse of an intellectual property right in "content" resulting in the foregoing categories of "media and content liability anomalies".

28. **SECTION II – EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO SECTION I - COVERAGE A. TECHNOLOGY LIABILITY COVERAGE AND B. FIRST PARTY CYBER COVERAGE, 4. Intellectual Property** excludes coverage for any liability or expense arising out of theft, misappropriation, misuse, infringement or contributory infringement of any intellectual property right, with the exception of coverage provided under **SECTION I – COVERAGE, A. TECHNOLOGY LIABILITY COVERAGE, 4. MEDIA AND CONTENT LIABILITY**.

29. Alternatively, Count V alleges liability on the part of Max Minds arising out of unfair competition and/or unfair or deceptive business or trade practices, which is excluded under **SECTION II – EXCLUSIONS, B. EXCLUSIONS APPLICABLE TO SECTION I – COVERAGE A. TECHNOLOGY LIABILITY COVERAGE ONLY, 8. Unfair or Deceptive Business Practices**.

30. Because Count V is excluded from coverage, Hanover has no duty to defend or indemnify Max Minds with respect to Count V of the Triangle Complaint.

## **COUNT IV**

### **(Reimbursement of Defense Costs)**

31. Hanover incorporates and re-alleges Paragraphs 1 through 30 above as Paragraph 31, as though fully set forth herein.

32. Hanover is providing a defense of the Triangle Complaint to Max Minds, pursuant to a reservation of Hanover's rights under the 23-24 Policy, 24-25 Policy and the applicable law.

33. Upon agreeing to provide a defense to Max Minds as set forth in Paragraph 32, above, Hanover reserved the right to seek reimbursement from Max Minds of the fees and expenses paid by Hanover for that defense.

34. Because the Triangle Complaint is not potentially or actually within the coverage of the 23-24 Policy or 24-25 Policy, Hanover has never had a duty to defend Max Minds and is entitled to reimbursement of all fees and expenses paid by Hanover toward the defense of Max Minds in connection with the Triangle Complaint.

WHEREFORE, Plaintiff, HANOVER INSURANCE COMPANY, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants MAX MINDS, LLC and TRIANGLE EXPERIENCE GROUP, INC., finding and declaring:

A. Hanover has no duty to defend or indemnify Max Minds in connection with the Triangle Complaint; and

B. Hanover is entitled to reimbursement of all fees and expenses it has paid to defend Max Minds against the Triangle Complaint; and

C. Any other relief deemed necessary and appropriate by this Court.

Dated: March 25, 2024

                                            Respectfully submitted,

/s/ *Kathryn E. Bonorchis*

Kathryn E. Bonorchis #80007
LEWIS, BRISBOIS, BISGAARD &
  SMITH LLP
100 Light Street, Suite 1300
Baltimore, Maryland, 21202
Telephone: 410-525-6409
Fax: 410-779-3910
Kathryn.Bonorchis@lewisbrisbois.com
*Attorneys for Plaintiff*